Good morning, I'm Russell Rappaport, attorney for Elissa Miller, Chapter 7 trustee, appellant. I've always considered myself to be a pretty logical person and have a good deal of common sense and I think those attributes have served me well over my 43 year legal career. I generally find the law is pretty logical and common sense, not always but most of the time. Logic and common sense dictate that when a corporation pays its shareholders debt without recourse, that's tantamount to paying the shareholder, just as if they paid the shareholder and the shareholder paid the creditor. If a corporation gives its Is there any authority to support the argument that payment under guarantee can be then re-characterized as a dividend? Any case law that helps your argument? Not a single case that I could find that deals with a re-characterization issue involving a guarantee one way or the other. No case that says it can be re-characterized, no case that says it can't be re-characterized. I think that this is an issue of first impression and consequently it is logic and it is common sense that is the basis for the ruling and of course the case law that says that no particular format is required in the documentation to have something declared a dividend. What is a dividend depends on the facts of the case and even though it's not designated as such by the Board of Directors, even though it's not called a dividend, payments to or for the benefit of the shareholder, if the substance is that they are a dividend, I submit that the guarantee agreement, the agreement to pay the shareholder's debt is tantamount to an agreement to pay the shareholder. Whether it's a dividend or not, that's a question of fact that we review for clear error, is that right? Is it a question of fact? No, I believe it's a question of law whether the payment was a dividend or was something else. I frankly don't have a problem with the concept that even though there's no authority yet saying that a payment could be a disguised dividend in these for the bankruptcy court to say that it wasn't, not as a matter of law but as a matter of fact. There are various characteristics of dividends and you do get disguised dividend litigation in tax law. Is the amount paid pro rata to all the shareholders, for example, was it here? Well, as a matter of law, if a corporation gives its shareholder money for no reason other than the fact that it's a shareholder. If a shareholder gives or if a corporation gives a shareholder money, all the shareholders, for example, suppose one person is a 100% shareholder and the 100% shareholder got the money than the creditors. So it declares a dividend and gives it all to the shareholder. Well, that's going to be a preference. If it structures it in a more complicated way, it could still amount to the same thing even though the paperwork didn't say so. But that would be because he's a 100% shareholder. Or there could be 10 shareholders each with 10% of the shares. Or, as is more common, there could be multiple shareholders with differing percentages of the shares. And you look for pro rata distribution to the shareholders to see if it looks like a dividend. Well, you're talking about these pro rata shares. That may be an issue in a different context, but we are dealing here with Paradigm being a corporation that does have a 100% shareholder. Who's a 100% shareholder? Pacific CMA, LLC. And Pacific CMA, LLC guaranteed payment of a $3.5 million loan, so it was obligated to pay that $3.5 million debt. Can I ask just procedurally where we are in this case? This case is unusual in that the bankruptcy court made a report and recommendation to the district court. Correct. So would you agree we're actually reviewing the district court decision? Correct. Not the bankruptcy court decision? Well, except to the extent that... It adopted the bankruptcy court decision, but it's just as if a magistrate judge gave a report and recommendation. We review the district court decision rather than... Correct. So, procedurally, I just want to be sure where we are. I agree. Okay. BHC was a creditor with a security interest. Is that correct? BHC loaned money that was used by Pacific CMA, Inc., a corporation, to purchase preferred and common stock that it had issued. And it had a security interest? And Paradigm guaranteed that payment because it was compelled to do so by its sole shareholder who had guaranteed payment of the debt and was obligated to that. The stock was pledged or otherwise used as security? And to secure performance of that guarantee, Paradigm did execute a security agreement. Yes. Why wouldn't the secured creditor come first before the unsecured creditors, such as the lawyers who got stiffed? Because if the guarantee agreement is re-characterized as an agreement to pay a dividend, then the security is security for the agreement to pay a dividend, and the payment of the dividend is conditioned upon there being surplus available so that creditors are protected. A dividend can only properly be paid when the general creditors are paid or adequate provision is made so that there are funds available or assets available from which they can be paid. So you're really not contending that the money is the dividend. You're contending that the guarantee agreement is the dividend. No, I'm contending. That's what the district court erroneously said. I'm contending that the guarantee is an agreement to pay a dividend and that the actual payment of the money is the dividend. If a corporation gives its shareholder money for no reason other than the fact that it is a shareholder with no intention or provision for it being returned, it's a dividend. If there's no other reason. But to pay a creditor, a secured creditor, is not a for no other reason case. I agree, provided it is the typical creditor. But if it's a creditor... It's not about typical creditors. In close corporations, you often have people wearing multiple hats. Yes. The people may be shareholders. They may also finance the corporation. For example, some doctors may decide to build a building, and they create a corporation to own the medical building. And the senior doctors guarantee the loans from the bank for the medical building. They also have a promise from the corporation they created to disperse to them, out of the loan funds, certain amounts or obtain releases as the bank will grant them. They have all kinds of contractual relations with the corporation, not just the shareholders. Not uncommon at all, and not wrongful in most circumstances. And I can't see why performance of those agreements to them, not as shareholders, but as holding some other relationship, are dividends. It depends on the specific terms and circumstances at the time that payments are made. In this case, clearly, when the $284,000 was taken away from Paradigm, Paradigm was insolvent. It could not have paid a dividend to its shareholder. And the shareholder couldn't have given somebody else the right to take Paradigm's money that the shareholder didn't have the right to take. Why Paradigm is not making the payment to a shareholder in the shareholder's capacity of shareholder, but rather to be making the payment to the shareholder in its capacity as a beneficiary of a guarantee agreement? I'm not sure I understand that. What's the difference between giving the shareholder money? If a corporation gives the shareholder money without any repayment, it's giving the money. If it's a loan. I'm sure there's a difference. I mean, if I loan you $100, and I also have some shareholder interest in your professional corporation, and you pay me back the $100 I loaned you, that money's not coming to me because I own shares in your professional corporation. Correct, but there was no loan here. To the contrary, the biggest asset on Paradigm's books was over $3 million owed to it by affiliates. So it wasn't repaying anything that it owes anybody else. It was a pure payment effectively to its sole shareholder solely because it's a shareholder, not for any other reason. Can you clarify for me, counsel, it wasn't clear whether there were other creditors involved and how they were harmed in any way. Did anybody raise an objection or make a claim to the receivable owed to Paradigm? Nobody else made a claim to the receivable, but petitioning creditors in the involuntary bankruptcy case were all creditors of Paradigm that weren't paid and could have been paid out of the $284,000 if it wasn't improperly transferred as a dividend for the benefit of its sole shareholder. There were other secured creditors? Not secured. Unsecured creditors. Unsecured creditors. But again, if the guarantee is properly characterized as an agreement to pay a dividend, then the security agreement secured the agreement to pay a dividend and the dividend could only be paid out of surplus. There had to remain sufficient funds to pay the creditors and it didn't happen. So the guarantee was an agreement to pay dividends only, pay out of dividends only? Is that what you said? Well, I'm saying that this guarantee, because it waived all rights of reimbursement, repayment, contribution, all rights of subrogation, this was simply an agreement by the corporation to give its shareholder money by paying it directly to the shareholder's creditors. And that, by definition, is a dividend. And even though it's called a guarantee, it is a contract to pay a dividend. You say there is no case that supports your interpretation of this guarantee as a dividend? That's just logic? Correct. Did you want to save any time for rebuttal? Yes, I would. Thank you. Good morning. Good morning. May it please the Court, Sarah Chenitz, Perkins Coie LLP for the appellee, to respond to some of the issues that were raised in the prior discussion. The Ninth Circuit has directly held that a review of whether a distribution is a dividend or a payment to a creditor is reviewed, and clearly erroneous standard. That's in the Goldstein v. Commissioner of the Internal Revenue Service case cited in our briefs. As is common and is suggested by Judge Kleinfeld, a party can be both a shareholder and a creditor. It happens frequently. However, here, that's not what we had. The structure of the loan and ownership arrangements are set off in the chart in our reply brief on page 11. And it's pretty simple. And most of the facts in this record were stipulated. They were stipulated through a joint pretrial order submitted to the bankruptcy judge and were discussed in detail by the district judge in his order adopting the bankruptcy judge's reports and recommendations. The stipulated facts in detail, and this can be found at the excerpts of records from pages 2 to 5, go into detail in the process of how BHC and Paradigm entered into a transaction, how Paradigm guaranteed the loan of its affiliate, a common event, and how for years after this loan was executed, first in 2007, monthly interest payments were made in a typical fashion of the loan. That ended in 2009 when, as commonly called, the Great Recession hit, and Paradigm and its affiliates, which are custom brokers, faced financial problems as less was being shipped around the world. It defaulted. So upon default, BHC did what a prudent lender will do and what its loan agreements that had been in place for two years authorized, and it started to execute rights as a secured lender. It sent notices of default. It negotiated restructuring terms. It sent a letter to an account party of Paradigm, somebody that owed money to Paradigm, and said, please don't pay Paradigm, pay us, as authorized under the loan agreements and authorized under the Uniform Commercial Code in Section 607 of Article 9. And Nygaard, who was the party that owed the money to Paradigm, said, I don't want to pay twice. So it started an interplea action in the district court and said, I'm depositing the money, you two fight it out. And so that fight began. BHC said the money is mine, cross-claimed against Paradigm. Paradigm hired counsel. Mr. Rappaport was one of the lawyers who represented Paradigm. The allegation has been made and discussed at length in the briefs that BHC became an insider somehow and that it became a shareholder. What BHC did, and is also in the stipulated facts. It didn't become a shareholder. Didn't it exercise its rights to become the shareholder because shares were pledged as security? What it did was exercise its rights under the pledge and security agreements to say it was taking voting control. It didn't become the shareholder. And that's in the stipulated facts as well. And in saying it would take voting control, it said it would like to fire somebody, Mr. Lamb, who was the ultimate shareholder of the parent company. And this was ultimately a public company. And some of the evidence on solvency comes from the SEC reporting. So another reason it wasn't a dividend is it wasn't made to shareholders. Correct. BHC never became a shareholder. What it did was say we want to exercise our voting rights. But that was ignored because what happened was when BHC sued Paradigm, now the debtor, it hired counsel to defend against BHC. If BHC was controlling Paradigm, you'd think it would have not hired counsel. And later on, Mr. Lamb, who ultimately was the shareholder, wrote to the district court after counsel had withdrawn, saying they had lost an ability to communicate with their client, which was not their cross-defendant. He said, my lawyers that I hired withdrew and I need time to get new counsel. Well, by then a judgment had already been entered, and it is on that district court judgment as a secured creditor that BHC received $234,000 roughly of its $3.8 million claim. The claims register is in the appellate record. BHC has the largest claim. It's a $3.8 million claim. The trustee never objected to the claim. So it got paid out as a secured creditor. The little bit it received was as a secured creditor. It never became a shareholder, but even if it had, this particular payment was because it was a secured creditor. Yes, it was secured creditor on a guarantee, but that's hardly extraordinary. That's why lenders get guarantees in case the primary obligor doesn't pay. And that happens sometimes. And it happened here. Pretty much all the time, doesn't it, with a corporation? Indeed. Indeed. And then what happened, you know, counsel makes a point on the guarantee having a waiver of subrogation. That waiver of subrogation is designed to protect against an affiliate paying its affiliate as opposed to paying its legitimate creditors. When you read the language, which is at page 99 of the excerpts of record, it makes clear you can't pay each other or a family of companies if we're owed money. That's the subrogation. That's the point of the subrogation. I didn't quite understand that, but I don't think it matters whether I understand it. I can't quite see who would be subrogated to whom. I've struggled with it as well, but I just go back to the document and look and say, so what? That the subrogation is there, that an affiliate can't pay an affiliate when they owe creditors money. That's basically the argument being made. I understand the guarantees. Fine. You loan money to a corporation. A hundred percent of the shares are owned by John and Sally Jones. You get guarantees from John and Sally Jones. I can't figure out who would be subrogated to whom or why it would matter. Is there anything important there? I don't think so, Your Honor. I just was trying to be responsive to comments made. Appellant's counsel also commented on solvency. And the important time of solvency is when this guarantee was created. The district court, in its order and adoption of its report and recommendation, goes to some length on discussing why the paradigm was solvent on all available evidence. At the time, yet noting that this was the trustee's burden to prove a lack of solvency, and they didn't. Would that matter if it's not a dividend? On the dividend question, no. I mean, if it's a dividend, whatever was the par value of the stock when the corporation was created, you can't have assets fall below that and pay them out as a dividend. Yeah, I think that's right. But if it's not a dividend, I think you can. You can pay every nickel out, can't you? Right. And the first party to get paid is a secured creditor. The only thing is if it's a preference. Right. So you suck back in. Right. It's a preference under Section 547 of the Bankruptcy Code. One of the elements is that it's more than you would get in a liquidation. And if you're a secured creditor with a lien on all assets of the debtor in bankruptcy, it is not more than you would get in a liquidation. And both the bankruptcy judge and the district court judge dispose of the preference issue with that. On the solvency question in terms of 2007, years before the default occurred, we have a number of stipulated facts on that as well. And that's excerpts of records, pages 3 to 5, stipulated facts 11, 14, 18, 19, and 21. Is BHC the only secured creditor? Yes. So the lawyers who didn't get paid for their work, they would just be unsecured creditors and the secured creditor would take first? Correct. And the unpaid work was defending the- I don't care what it was, and I don't care that it's on contingent fee. I know you raised that in your brief, and I couldn't see why it mattered. The reason we raised- I mean, they're lawyers. Their business is providing legal services. They did, and they didn't get paid for them. Right. And I'm certainly all for lawyers getting paid. Me too. But the reason we raised the issue of counsel in the interplayer action was to show a lack of control. That BHC did not control Paradigm at the time of the litigation. It had independent counsel. They acted on behalf of Paradigm. When they were unable to be in touch with Paradigm, they sort of leave to withdraw. That is why that is mentioned. And there were other indicators of that as well, including the fact that BHC was sued by Paradigm after it sent the letter saying it wanted to exercise voting control in court in New York. I think this argument is piling on, isn't it? If BHC is the only secured creditor and it's got its money as a secured creditor and it's not even a shareholder, why wouldn't that be the end of it? That is the end on the dividend as far as I see it, Your Honor, certainly. Unless the Court has other questions, I just respectfully refer the Court to the arguments in our brief and the record on appeal. All right. Thank you, counsel. Thank you. Roboto. Paragraph 44 of BHC's cross-complaint in the interpleader action states, quote, as a result of such stated events of default, BHC has exercised its power as attorney in fact for Pacific to transfer to BHC all Pacific stock in Paradigm and exercise its voting rights in Paradigm. Is this Nygaard, the dress seller, or is this? This is BHC's cross-complaint. This is BHC saying this. It's in its cross-complaint in the district court action. It is document number 40 on the district court docket. It's in the record. And that's an admission by BHC that they were the shareholder when this cross-complaint was filed, which was obviously before they got the money. So BHC was a shareholder. Whether it is or not, you're saying it's judicially estopped from denying that it's a shareholder. Yes. Whether it's a shareholder or not, even if it only had exclusive voting control over the stock, it was still an insider as it had absolute control over the company. Whether it had title to the stock or not, if it had all the voting rights, it controlled the company. And it did. Council made reference. Why does that matter? I got a company to give a dividend to shareholders. I can't see why the insider status would matter. Let me make one other point. Council made reference to the fact that my former firm made an appearance on behalf of Paradigm in the district court lawsuit and then withdrew. My firm was not hired by Mr. Lamb. It was hired by Mr. Kafalis, who was the general manager of Paradigm at the time. And it was when he was terminated and we no longer had anybody to communicate with, that we had to move to withdraw. And that was before an answer could be filed. And nobody had control to be able to affect Mr. Kafalis's termination, other than the ones that were the sole shareholder or had control of all of the stock. So I think that's very significant on the fraudulent transfer claims, because terminating management, not preserving records, all made it impossible for the trustee to come up with evidence, made things, I think, suspect in the Pepper versus Litton kind of scenario, and put the burden on the shareholder, on the parties in control, to prove the bona fides of the situation. Now, I'm sorry, you asked a question that I'm not sure I answered. All right, thank you, counsel. Thank you to both counsel. The case just argued is submitted for decision by the court. That completes our calendar for the day and for the week.
judges: Kleinfeld, Rawlinson, Nguyen